IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS PRATT,

    Plaintiff,

    v.

CALIFORNIA STATE BOARD OF PHARMACY, et al.,

    Defendants.

No. Civ. 05-0345 DFL PAN

MEMORANDUM OF OPINION AND ORDER

    Plaintiff Thomas Pratt ("Pratt") failed the pharmacist licensing examination on three occasions.  In this action, he accuses the California State Board of Pharmacy and several of its employees of race discrimination in violation of the United States Constitution.  In a supplemental state law claim, he alleges negligence by defendant Applied Measurement Professionals, Inc. ("AMP"), a firm that consulted on the content and grading of the test.  AMP now moves for summary judgment on the basis that it did not breach a duty of care.  Pratt has requested a continuance because, during the briefing on this motion, he was waiting for a ruling on his motion to compel

1

further discovery that was pending before the assigned Magistrate Judge.  For the reasons stated below, AMP's summary judgment motion is GRANTED and Pratt's request for a continuance is DENIED.

I.

Pratt is an African-American male who has taken and failed the California State Board of Pharmacy ("CSBP") license exam on three occasions -- June 2002, January 2003, and June 2003.  (First Am. Verified Compl. ("Compl.") ¶ 1, 4.)  Each of the exams that Pratt took contained two parts: (1) a multiple choice section ("Part 1"); and (2) a short-answer essay section ("Part 2").  (Id. ¶ 4.)  Pratt passed Part 1 of each test, but failed Part 2.  (Id.)

AMP is a consulting company that, among other things, provides examination consulting services.  (Def.'s Ex. 1.)  In 2000, AMP agreed to assist CSBP in creating the CSBP license exam.  (Def.'s Statement of Undisputed Facts ("SUF") ¶ 1.)  Under a contract with CSBP, AMP created a document entitled "Job Analysis Study of the California Pharmacist" ("Study")  (Id. ¶ 10.)  The Study served to "describe the job activities of the California pharmacist in sufficient detail to provide a basis for the development of a professional, job-related licensing examination."  (Id. ¶ 11.)  Ultimately, the Study led to the creation of a "Detailed Content Outline" which set forth the material to be covered in the exam.  (Compl. ¶ 5.)

Both parties agree that Part 1 of the exam derived from the

1  Study and the Detailed Content Outline.  (SUF ¶ 26; Pl.'s Opp'n
2  to SUF ¶ 26.)  However, Pratt alleges that Part 2 was not based
3  on any reliable methodology or content outline.  (Compl. ¶ 6.)
4  Therefore, Pratt alleges that AMP breached a duty "to take
5  appropriate steps to rectify the unreliability of Part Two."  He
6  further contends that "by grading the exam and recommending a
7  passing score, AMP breached its duty of care to Pratt and caused
8  Pratt damages."  (Compl. ¶ 22.)

On October 4, 2004, AMP filed a motion for summary judgment. On the same day, Pratt filed with the magistrate judge a motion to compel further responses to a request for production of documents.  Pratt filed an amended motion to compel on October 13, 2005.  Pratt's motion sought: (1) the names and addresses of the judges that contributed to setting the passing score for the 2002 and 2003 exams; (2) the correct and incorrect item responses for the 2001, 2002, and 2003 exams; and (3) diskettes of each candidate's individual response to every essay item for the 2001, 2002, and 2003 exams.  (Pl.'s Mot. to Compel at 3-7.)  Pratt's motion was granted in part and denied in part on January 6, 2006, after oral argument on the summary judgment motion.[1]

---

[1] The Magistrate Judge ordered AMP to provide Pratt with "the essay/short answer questions and his answers thereto that were graded as incorrect on the June 2002 [CSBP] Examination as well as the portions of the answer keys as to only those questions graded as incorrect on plaintiff's June 2002 examination." (1/6/2006 Order at 2.) Pratt's motion was otherwise denied. (Id. at 3.)

3

II.

A. <u>Request for Continuance</u>

In response to AMP's motion for summary judgment, Pratt requests a continuance, arguing that he cannot oppose the motion without the documents he seeks through his motion to compel. (Opp'n at 15.) Specifically, Pratt's attorney asserts that his expert, Walter Haney, "is uncomfortable giving an opinion in this case until he has had an opportunity to[] review all of the documents in this case, including the tests, answer keys, and computer files." (Saacke Decl. ¶ 25.) No explanation of this discomfort is provided by the expert or by counsel. No explanation is given as to why the expert is unable to give any opinion whatsoever unless the motion to compel is granted.

Under Rule 56(f), a party seeking a continuance must show: "(1) that [the party has] set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery; (2) that the facts sought exist; and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." <u>California v. Campbell</u>, 138 F.3d 772, 779 (9th Cir. 1998).

Although Pratt did not cite Rule 56(f) or file a Rule 56(f) motion, he filed a motion to compel.  The court will consider that the motion to compel satisfies the first two requirements of Rule 56(f).  Nevertheless, Pratt has not demonstrated that the facts he seeks are essential to resist AMP's summary judgment motion.  Indeed, he makes no effort to make this demonstration.

4

Rather, as the discussion below makes evident, the discovery sought by the motion to compel was not at all necessary to the resolution of the issues presented by the summary judgment motion. Therefore, Pratt's request for a continuance is DENIED.

B. <u>Motion for Summary Judgment</u>

In the usual negligence case, the standard of care is that of the "ordinary prudent or reasonable person." <u>Trucker v. Lombardo</u>, 47 Cal. 2d 457, 464 (1956). A professional has a somewhat heightened standard of care and "is required to make reasonable use of his superior knowledge, skills and experience within the areas of his expertise." Restatement (Second) of Torts § 289. Pratt argues that AMP breached a duty of care to him by failing to: (1) ensure that the content of the exam was based on the responsibilities of California pharmacists; (2) establish a proper grading methodology; and (3) ensure that the scores on the exam accurately reflected the applicants' abilities. However, Pratt fails to come forward with sufficient evidence from which a reasonable jury could find that AMP did not act as a reasonable testing organization.

1. <u>Basis for the Exam</u>

Pratt argues that Part 2 of each exam was not job-related because it did not correlate with the Study AMP performed. As a result, Pratt contends that AMP's negligence caused the exams to be unreliable and invalid. The facts presented do not support this claim. AMP's Exhibit 4 contains the Test Specifications outline for Part 2 of the exam. AMP's Vice President of Research

5

and Development, Steven Nettles, declares under oath that this outline was "used in connection with all three of the examinations taken by [Pratt]." (Nettles Decl. ¶ 11.) This is supported by AMP's exhibits 5, 6, and 7. Those exhibits include the psychometric evaluations of the three exams that Pratt took. Table 3 in each evaluation lists the content categories included on each exam. These lists match the content categories listed on the Test Specifications outline exactly.

Nettles also declares that the Test Specifications outline relates directly to the Study. (Nettles Decl. ¶ 11.) AMP's exhibits support this assertion; the outline cites section numbers to reference complexity levels[2] listed on page 20 of the Study. (Def.'s Exs. 1, 4.) This evidence shows that AMP used the Study for Part 2. It was, therefore, incumbent upon Pratt to rebut this evidence. He failed to do so. He merely states that it is his "belief that the [Test Specifications outline] was created after the essay examinations were given" since the outline was not dated. (Opp'n at 4.) Pratt's "belief" is not evidence, and AMP's exhibits 5, 6, and 7 contradict his "belief" anyway. The discovery sought in the motion to compel -- the judges' personal information and the exam responses -- even if obtained, would not assist Pratt in rebutting AMP's evidence on this issue. Accordingly, because there is no factual dispute, AMP is entitled to summary judgment on Pratt's claim that Part 2

---

[2] Complexity levels are numbers that indicate the difficulty of each particular testing category.

of the exam was not based upon AMP's Job Analysis Study.

Pratt also argues that the Test Specifications outline is not sufficiently detailed to provide for a reliable exam. (Opp'n at 5.) Pratt complains that the outline contains "no complexity level separated into categories of recall, application and analysis, no mean complexity determination, and [does] not account for the two-point weighted items." (Id.) These points are irrelevant. As discussed above, the outline referred to page 20 of the Study which set forth the complexity levels for the different essay question categories. Moreover, Pratt presents no evidence that failure to include such detail on the outline demonstrates a breach of the duty of care. The facts sought through the motion to compel do not address what is required in a Test Specifications outline. There is no reason why Pratt's expert could not have addressed this topic. But he did not, and all that is left is bald assertion.

2. <u>Grading Methodology</u>

Pratt contends that AMP created an unreliable grading methodology because AMP: (1) misapplied the procedure that it used to establish passing scores; (2) failed to reduce the passing point scores to account for test error; and (3) recommended using a higher passing point than called for by the Study. These contentions are also unsupported by the evidence presented.

a. <u>Procedure to Establish Passing Scores</u>

For each exam, AMP conducts a "passing point" study to

7

determine the score that examinees must achieve to pass the exam. (Def.'s Ex. 8, p. 1.)  To do this, AMP uses the Angoff method, which rates the difficulty of the exam in light of what is expected of the examinees.  (Id.)  The procedure requires a group of judges, who are pharmacists, to "render an expected performance rating for each test item."  (Id.)  A judge's rating indicates the number of minimally competent practitioners ("MCPs") out of 100 that they believe will correctly answer the item.  (Id. at 3.)

In Part 2 of the exam, some questions are worth two points rather than one because they address "two specific issues that must be addressed together." (Opp'n at 7.)  No partial points are allowed for those questions.  (Id.)  When the AMP judges analyze these sorts of questions, they assign a rating to each part of the two-part question.  (Id.)  Thus, the first part of a question could receive a high difficulty rating, while the other part receives a low rating.

Pratt argues that AMP's application of the procedure is improper.  Pratt claims that the judges should assign one rating for each overall question, rather than for each part of each question. (Opp'n at 11.)  To support this, Pratt points to the language by Angoff which says that judges should rate each "item."  (Id. at 10.)  Pratt interprets "item" to mean "question."  (Id.)  Therefore, he concludes that the judges should rate each question as a whole, rather than parts of questions.  (Id.)  Pratt insists that AMP's failure to do so was

8

negligent.

Pratt's argument is entirely unfounded. Angoff's use of the word "item" does not imply that judges should not evaluate questions by their parts. One question could have two "items" to evaluate. Even assuming that AMP did not accurately apply the Angoff method, Pratt presents no evidence establishing that AMP failed to act as a reasonable testing organization in applying its own method. Angoff's method is merely a suggested method, not the only method. (See Pl.'s Ex. N.)

Again, there is a gaping hole in plaintiff's case because neither his expert nor anyone else qualified to venture an opinion explains why AMP's method is negligent. And, as before, there is nothing in the pending discovery request that bears on this issue of methodology.

### b. Reducing Passing Point Scores to Account for Test Error

Pratt also claims that the grading methodology was faulty because AMP did not reduce the passing point for the June 2002 and January 2003 exams to account for test error. (Opp'n to SUF ¶ 68.) To support this, Pratt cites his Exhibit S. (Id.) However, Exhibit S merely discusses one method for reducing passing points to adjust for statistical error. The exhibit does not suggest that failing to follow that particular method is negligent. As AMP points out, "[m]any methods exist for determining and selecting a passing point. Likewise, many methods exist for adjusting the passing point based on the data."

9

(Reply to Opp'n to SUF ¶ 68.)  Pratt has not shown that AMP's method was unreliable or invalid.  Again, Pratt's expert could have provided an expert opinion on this issue without the evidence sought through the motion to compel.

Also, Pratt presents no evidence showing that AMP actually set the passing points.  AMP claims that it provided the CSBP with a recommended range of passing scores and the CSBP made the final determination of what score would apply.  (Id.)  There is no rebuttal to this evidence.

        c.   <u>Recommendation to Use a Higher Passing Point</u>

Pratt also argues that AMP was negligent when it recommended that CSBP "completely disregard the established passing point and use a higher passing point than the study called for."  (Opp'n to SUF ¶ 36, citing Pl.'s Ex. F.)  Pratt mischaracterizes AMP's recommendation.  As Pratt's Exhibit F demonstrates, AMP merely proposed another method to calculate the passing point so that the passing rate would be similar to the previous year's rate. (Pl.'s Ex. F.)  AMP noted that this "equipercentile cut" would be "just one more option to consider."  (Id.)  Pratt presents no evidence that this option was less reliable than any other option.  Nor does Pratt demonstrate that suggesting this option constitutes negligence.  While Pratt's expert could have provided a declaration on this issue without the discovery subject to the motion to compel, he did not do so.

    3.  <u>Accurate Reflection of Applicants' Abilities</u>

Finally, Pratt contends that the CSBP licensing exams he

10

took were not reliable because they did not accurately reflect applicants' abilities. To support this contention, he claims that: (1) AMP did not maintain and evaluate an item bank of past exams; and (2) the reliability coefficients for the exams were lower than .80. As discussed below, these contentions, even if true, are irrelevant to the issue of AMP's negligence.

        a.  <u>Item Bank</u>

Pratt claims that the exams did not accurately reflect applicants' abilities because AMP did not maintain and evaluate an item bank for the exams. (Opp'n to SUF ¶ 24.) Pratt claims that this is a minimum requirement for a valid examination according to the California Examination Validation Policy. (<u>Id.</u>) However, Pratt misreads the policy. The relevant paragraph of the policy states:

> The number of items in an examination should be sufficient to ensure adequate content coverage and provide reliable measurement. Both subject matter expert judgment and empirical data should be used to establish the number of items within an examination. The empirical data should include results from occupational analysis and item and test analysis. The item bank for an examination should contain a sufficient number of items such that: (1) at least one new form of the examination could be generated if a security breach occurred, and (2) items are not exposed too frequently to repeating examinees.

(Pl.'s Ex. C.) Generally, the policy requires an examiner to ensure adequate content coverage and reliable measurement of abilities. The policy does not explicitly require an item bank and says nothing about using an item bank to assure validity. Even if an item bank were required, the purpose of an item bank

11

under the policy is to deal with a breach in exam security and to keep repeat examinees from having too great an advantage. But there is no contention here that there was a breach of exam security, and given that plaintiff is a repeat examinee, the absence of an item bank, if true, would have worked to his advantage. Nor does plaintiff provide any evidence that failure to maintain an adequate item bank is below professional standards or somehow vitiates the exam that is given. Pratt's expert submitted no opinion on this topic even though the discovery sought in the motion to compel did not relate to the item bank.

        b.   <u>Reliability Coefficient</u>

The "reliability coefficient" measures the correlation between the actual exam and a hypothetical exam that truly measures the test takers' abilities. The score can range between 0 and 1.00. Pratt points out that the reliability coefficients for the exams he took were .76, .70, and .74. (Opp'n at 2.) He claims that the score should be at least .80, and that AMP admits that the score should be .85. (<u>Id.</u>) However, once again, Pratt fails to support these claims with any evidence, expert or otherwise.

The Ebel text cited by Pratt states, "The reliability of a good objective test is expected to vary with the number of items it includes and with the range of abilities in the group tested." (Pl.'s Ex. E.) Ebel suggests that a .80 might be the expected score in certain circumstances, but that the score might be lower if the examinee class is more homogenous than normal and the exam

12

has fewer questions. (Id.)  Also, AMP only states that a score of .85 is a "highly acceptable reliability coefficient." (See Def.'s Ex. 5, p. 9; Ex. 6, p. 8; Ex. 7, p. 8.)  It never states that a lesser score is insufficient. (Id.)

Pratt could have provided an expert's declaration confirming that scores of .80 or .85 are required for a reliable exam, but he did not do so.  Such a declaration would not have required the evidence sought through the motion to compel.

III.

For the reasons stated above, Pratt has failed to produce sufficient evidence to support his negligence claim.  The arguments he raised in support of this claim did not relate to the evidence sought by the motion to compel.  Therefore, AMP's motion for summary judgment is GRANTED, and Pratt's request to continue is DENIED.

IT IS SO ORDERED.

Dated: 1/31/2006

_____
DAVID F. LEVI
United States District Judge