IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS PRATT,

    Plaintiff,

    v.

CALIFORNIA STATE BOARD OF PHARMACY, et al.,

    Defendants.

No. Civ. 05-0345 DFL PAN

MEMORANDUM OF OPINION AND ORDER

Plaintiff Thomas Pratt ("Pratt") failed the pharmacist licensing examination three times. In this action, he claimed that the grading of the examination discriminated against him because of his race. Defendants Patricia Harris ("Harris"), the Executive Officer of the California State Board of Pharmacy ("CSBP") and Virginia Herold ("Herold"), Assistant Executive Officer of the CSBP, succeeded on a motion for summary judgment.[1] They now move for attorney's fees in the amount of $98,093. For

---

[1] In a supplemental state law negligence claim, Pratt also sued Applied Measurement Professionals, Inc. ("AMP"), a firm that consulted on the content and grading of the test. The court granted AMP's motion for summary judgment on February 1, 2006.

1

the reasons stated below, the court GRANTS defendants' motion for a reduced amount of $67,616.90.

I.

Pratt is an African-American male who has taken and failed the CSBP license exam three times. (First Am. Verified Compl. ("FAC") ¶¶ 1, 4.) Each of the exams that Pratt took contained two parts: (1) a multiple choice section ("Part 1"); and (2) a short-answer essay section ("Part 2"). (Id. ¶ 4.) Pratt passed Part 1 of each test, but failed Part 2. (Id.)

Pratt alleged that the CSBP grading methodology had a disparate impact on African Americans because the pass rate of Caucasians was significantly greater than the rate for "people of color." (Id. ¶ 7.) However, Pratt had no statistics of his own, and the CSBP does not compile statistics of pass rates based on race. (Defs.' Statement of Undisputed Facts ("SUF") ¶¶ 3-6.) Pratt testified at his deposition that the statistics upon which he relied in making the accusation of racial bias concerned the pass rates of "foreigners" and did not show the race of any examinee. (Id. ¶¶ 9, 10.) Pratt further admitted that he did not know how many African Americans passed or failed any of the exams. (Id. ¶ 13.)

Pratt also alleged in his complaint that Harris and Herold knew of the discrimination and "conspired with one another to facilitate it." (FAC ¶ 13.) Specifically, he claimed that Harris and Herold knew that the subjective nature of Part 2 of the exam allowed graders to grade Caucasians differently from

2

others. (Id. ¶ 8.) However, Pratt admitted in his deposition that this claim was based solely on his unsupported suspicion that the graders had access to photos of the examinees. (SUF ¶ 16.) In fact, graders do not have access to such photos, and would have no idea of the race of the particular examinee. (Id. ¶ 18.)

In short, all of plaintiff's claims of disparate treatment and disparate impact, based on race, were entirely unsupported.

In opposition to defendants' summary judgment motion, Pratt did not dispute any of these facts. Instead, he alleged for the first time that defendants discriminated against African Americans because they failed to compile or keep statistics of pass rates based on race. (Opp'n to MSJ at 2.) To support this claim, Pratt relied upon the expert declaration of Dr. John Poggio. (Id.)

The court rejected Pratt's argument because: (1) Pratt failed to disclose Poggio as an expert witness before the October 7, 2005 deadline set by the pre-trial scheduling order; (2) Pratt did not plead in the complaint or assert in response to the motion to dismiss that defendants had an affirmative duty to compile statistics on the race of test takers and their pass rates; (3) Pratt failed to cite or provide a copy of the sections of the EEOC guidelines that defendants allegedly violated; and (4) Pratt made no showing that a failure to keep statistics on the race of test takers was tantamount to racial bias or disparate impact in the design or administration of part 2 of the

test.  (4/7/2006 Order at 3-4.)

Pratt also claimed that defendants intentionally discriminated against him because several questions that he answered correctly were marked as incorrect.  (Opp'n to MSJ at 2-4.)  However, the court found that Pratt did not show how defendants' alleged grading errors demonstrated an intent to discriminate because of his race when there was no evidence that the graders had any knowledge of Pratt's race.  (4/7/2006 Order at 4, n.2.)

II.

Attorneys fees are only awarded to prevailing defendants in section 1983 actions where "the plaintiff's action is frivolous, unreasonable, or without foundation."  Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173 (1980).  "This test applies not only to the time the suit is filed, but throughout the litigation."  Maag v. Wessler, 944 F.2d 654, 657-58 (9th Cir. 1991).  Thus, fees may be assessed if a plaintiff continued to litigate the claim after it clearly becomes "frivolous, unreasonable, or groundless."  Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694 (1978).

A.  The Merits of Pratt's Action

Defendants argue that Pratt's action was groundless because he had no evidence at all to support his allegation that defendants intentionally discriminated against him because of his race.  (Mot. at 8-9.)  The complaint alleged that: (1) "Part Two of the examinations was based on no reliable methodology" (Compl.

4

¶ 6); (2) the grading scheme adversely impacted African Americans such as Pratt as evidenced by a comparison between "the failure rate of Caucasians/whites to the failure rate of people of color" (Id. ¶ 7); (3) the subjective nature of the exam "allows the graders to discriminate based on their perception that a person is not American, or based on their perception that an individual is of a different race, creed, or color than Caucasians/white" (Id. ¶ 8); and (4) Harris and Herold knew of the discrimination, intended it to occur, and conspired with each other to facilitate it. (Id. ¶ 13.)

At the time he filed the complaint, Pratt had no evidence to provide even a tenuous basis for his allegations. While Pratt claimed that the CSBP maintained statistics demonstrating the disparity between the failure rate of Caucasians and people of color, the CSBP did not keep such statistics and Pratt had no reason to think that it did. (SUF ¶¶ 3-6.) As the court discussed in its April 7, 2006 Order, Pratt admitted in his deposition that he did not know how many African Americans passed or failed any of the exams. (Id. ¶ 13.) Pratt also admitted that he had no support for his assertion that Harris and Herold knew of the discrimination. (Id. ¶ 16.) He based the claim solely on his suspicion that the graders had access to examinees' photos, which they did not. (Id. ¶ 16, 18.) The other facts listed by Pratt also did not support a claim of intentional discrimination. It is fair to conclude that Pratt had no evidence of racial discrimination when he filed the action and

5

that he was unable to develop such evidence in the course of discovery.

Nevertheless, Pratt still asserts that his complaint had merit because his expert, Poggio, found that the CSBP should have maintained statistics on minorities. (Opp'n at 2.) However, as the court also noted in its April 7, 2006 Order, Pratt failed to provide any evidence that failure to keep statistics is evidence of intentional discrimination. (4/7/2006 Order at 4.) Moreover, Poggio's opinion was entirely different than the theory on which this action was instituted and was not admissible evidence in any event due to Pratt's disregard of the scheduling order. (Id. at 3.)

Pratt also points out in his opposition that his complaint had merit because he introduced evidence that: (1) the CSBP incorrectly scored his exams; (2) defendants decided to change the passing point score of the exam from 63 to 67; and (3) the exam did not have test specifications. None of these contentions remotely suggests racial discrimination even were they supported by evidence.[2]

For these reasons, the court finds that Pratt's action was frivolous, thereby justifying an award of attorney's fees.

B. The Amount of the Award

Defendants request a total of $98,093.00 in fees. The

---

[2] The court also addressed these contentions on AMP's motion for summary judgment. The court found that none of them had merit. (2/1/2006 Order at 6-10.)

6

proper place to start for determining a reasonable fee is with the lodestar amount. Hensley v. Eckert, 461 U.S. 424, 433, 103 S.Ct. 1933 (1983). The lodestar is calculated by multiplying the total number of hours reasonably expended by a reasonable hourly rate. Id. However, the court will "exclude from this initial fee calculation hours that were not 'reasonably expended.'" Id. (citing S.Rep. No. 94-1011, p. 6 (1976)).

Defendants' attorney, D.L. Helfat, provides a declaration and a copy of his time sheets with this motion to support his calculation of attorney's fees. His declaration states that the Attorney General's Office's billable rate was $139.00 per hour for fiscal year 2004-05 and $146.00 per hour for fiscal year 2005-06. (Helfat Decl. ¶ 4.) This is a reasonable rate. See Martinez v. Longs Drug Stores, Inc., No. Civ-S-03-1843 DFL CMK, 2005 WL 3287233 at *4 (E.D.Cal. Nov. 28, 2005) (finding that rates of $250.00 per hour for an experienced attorney and $150.00 per hour for an associate are reasonable for the Sacramento area).

According to Helfat's declaration and time sheets, the AG's office spent 541.25 hours in 2004-05 and 95 hours in 2005-06 on this case, totaling 636 hours.[3] (Id. ¶ 5, Exs. A, B.) This leads to a fee of $92,193.00. Helfat's time sheets demonstrate that he spent this time: (1) responding to many discovery requests; (2)

---

[3] This amount excludes the time spent on this motion and the plaintiff's state court action, as well as the amount already charged to the California Office of Administrative Law. (Mot. at 10.)

7

researching the issues surrounding licensing examinations; (3) reviewing and redacting numerous documents; (4) preparing motions; (5) preparing for and attending hearings; and (6) traveling to Sacramento for meetings, depositions, document review, and expert consultation.  (Mot. at 10-11; Helfat Decl. ¶ 9.)  Helfat also seeks $5,840.00, the estimated cost of bringing this motion.

Pratt raises several arguments against awarding these fees. First, Pratt argues that "[d]efendants are not entitled to claim attorneys' fees for [m]otions that were denied, or even partially denied, or oppositions filed to [m]otions that were granted, or even partially granted."  (Opp'n at 8 (citing Galen v. County of Los Angeles, 322 F.Supp.2d 1045 (C.D.Cal. 2004).)  Pratt asserts that defendants should not recover fees for filing their motion to dismiss and for opposing his motion to compel because defendants did not succeed in either instance.  (Opp'n at 6, 8.)

Pratt is half right.  For the reasons stated below, the court finds that time spent on the motion to dismiss should not be awarded but that defendants are entitled to time spent opposing the motion to compel.  Therefore, the court will subtract only the cost of pursuing the motion to dismiss from the total fees requested.

Defendants moved to dismiss the claims against them on two grounds: (1) plaintiff's claims were non-justiciable because the court would have to usurp the State's power to determine who could be a licensed pharmacist; and (2) the complaint failed to

8

state a claim. (6/27/2005 Order at 1.) Although the court granted the motion in part, the bulk of the motion was without merit. First, Pratt's claims were clearly justiciable. If the court had found that Part 2 was intentionally discriminatory and did not further the State's legitimate licensing function, it would have the authority to grant some kind of relief to Pratt, including licensure. (Id. at 3.) The complaint also stated an intentional discrimination claim given the allegations. (Id. at 6.)

Because the motion to dismiss did not further defendants' legal position, the court will subtract the time spent on the motion from the total hours billed by Helfat. According to Helfat's timesheets, Helfat spent 48.5 hours on the motion from February to June in the 2004-05 fiscal year. Thus, the time spent for 2004-05 will be reduced from 541.25 hours to 492.75 hours.

As to the motion to compel, Pratt sought discovery of: (1) the names and addresses of the judges that contributed to setting the passing score for the 2002 and 2003 exams; (2) the correct and incorrect item responses for the 2001, 2002, and 2003 exams; and (3) diskettes of each candidate's individual response to every essay item for the 2001, 2002, and 2003 exams. (Pl.'s Mot. to Compel at 3-7.) The magistrate judge ordered defendants to provide Pratt only with "the essay/short answer questions and his answers thereto that were graded as incorrect on the June 2002 [CSBP] Examination as well as the portions of the answer keys as

1  to only those questions graded as incorrect on plaintiff's June
2  2002 examination." (1/6/2006 Order at 2.)  For the rest of the
3  exam question information, the magistrate judge issued a
4  protective order as requested by defendants.  (<u>Id.</u>)  Pratt's
5  motion was otherwise denied.  (<u>Id.</u> at 3.)  Because defendants
6  were largely successful in their opposition to the motion to
7  compel, the court grants defendants the attorney's fees
8  associated with the opposition.

9    Second, Pratt takes issue with the hourly rate.  He argues
10 that Helfat's salary should be the starting point, not the
11 reimbursement rate assessed by the AG.  This argument fails.  The
12 AG charges the various boards and board employees that it
13 represents in much the same way that any law firm charges its
14 clients.  And just as an associate's rate is not reduced to
15 reflect what the associate is actually paid by the firm, so it
16 would be improper to reduce Helfat's rate to reflect his salary.
17 The object of the entire exercise is to reimburse the prevailing
18 party for what that party actually paid, not to calculate the
19 take home pay of the assigned attorney.

20   Third, Pratt contends that the number of hours spent by
21 Helfat on the litigation were excessive.  Pratt asserts that his
22 attorney expended nothing like the amount of time Helfat
23 dedicated to the case.  However, this point is entirely without
24 force given plaintiff's lack of success in litigating this
25 action.  Nonetheless the court does consider that some reduction
26 in the number of hours is appropriate in the exercise of billing

10

judgment. A 25% reduction in Helfat's hours recognizes both that the case was not particularly complex and that many of the most intricate issues concerning the examination were resolved because of AMP's summary judgment motion. With this reduction and the reduction for the motion to dismiss, the number of hours is 369.6 for the 2004-05 fiscal year and 71.25 for the 2005-06 fiscal year, totaling 440.85 hours. Thus, the total fee award is $61,776.90. With the addition of the estimated cost of the fees motion, $5,840.00, the total award comes to $67,616.90.[4]

Finally, Pratt argues that, even were a substantial fee award appropriate, the court should not make the award because he is unemployed and only receives income from military disability payments. (Opp'n at 8.) However, Pratt has not provided a declaration or any other information regarding his financial condition. (Reply at 9-10.) Therefore, the court does not know how much income he receives through the military disability benefits or whether he is currently looking for employment. According to defendants, Pratt has a pharmacist's license in Nevada and could arguably find a well-paying job there. (Reply at 10.) The court will permit Pratt to seek a reduction in fees because of his financial condition by a motion for reduction,

---

[4] The court calculated the fee reduction as follows:
Helfat billed 541.25 hours for 2004-05. 541.25 total hours minus 48.5 hours spent on the motion to dismiss = 492.75. 492.75 x 0.75 = 369.6 hours. 369.6 x $139/hr. = $51,374.40 for 2004-05.
Helfat also billed 95 hours for 2005-06. 95 x 0.75 = 71.25 hours. 71.25 x $146/hr. = $10,402.50 for 2005-06.
$51,374.40 + $10,402.50 = $61,776.90.
$61,776.90 + $5,840.00 = $67,616.90.

with supporting declarations, within ten days of the date of this order.[5] The supplemental briefing and declarations should be limited to this issue.

## III.

For the reasons stated above, the court awards attorney's fees in the amount of $67,616.90.

IT IS SO ORDERED.

Dated: July 17, 2006

>                    /s/ David F. Levi
>                    DAVID F. LEVI
>                    United States District Judge

---

[5] While Pratt's financial situation may justify reducing the amount of fees awarded, it will not justify eliminating the award entirely. In awarding attorney's fees, courts consider the non-prevailing plaintiff's financial resources because "the award should not subject the plaintiff to financial ruin." Miller v. Los Angeles County Bd. of Educ., 827 F.2d 617, 621 (9th Cir. 1987). "However, a district court should not refuse to award attorney's fees . . . solely on the ground of the plaintiff's financial situation." Id. at 621 n.5 (citing Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982)). "A fee must be assessed which will serve the deterrent purpose of the statute, and no fee will provide no deterrence." Durrett, 678 F.2d at 917.